Filed 10/27/15  Kimberly B. v. Super. Ct. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| KIMBERLY B., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF FRESNO COUNTY, <br><br> Respondent; <br><br> FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Real Party in Interest. | F072063 <br><br> (Super. Ct. No. 14CEJ300132) <br><br><br> **OPINION** |

-----

### THE COURT[*]

ORIGINAL PROCEEDING; petition for extraordinary writ review.  Brian M. Arax, Judge.

Elizabeth Diaz, Public Defender, and Cheryl Kay Turner, for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and David F. Rodriguez, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

-----

[*]    Before Detjen, Acting P. J., Franson, J. and Peña, J.

Kimberly B. seeks extraordinary writ review of the juvenile court's orders issued at a combined six- and 12-month review hearing (Welf. & Inst. Code, § 366.21, subds. (e) & (f))[1] terminating her reunification services and setting a section 366.26 hearing as to her 15- and 13-year-old daughters M. and B. respectively. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

In April 2014, the Fresno County Department of Social Services (department) took then 13-year-old M. and 12-year-old B. into protective custody after M. disclosed that Kimberly's husband, Michael, sexually abused her and B. for over a year and that Kimberly knew but did not believe it. The girls also reported seeing Kimberly and Michael engage in domestic violence. The girls' presumed father was deceased.

A detective investigating the sexual abuse allegations stated that Michael was on felony probation for carjacking and had a violent criminal past, including attempted murder and assault with a firearm on a peace officer. The detective also stated that Kimberly was very hostile, called the girls "liars" and accused them of trying to break up her marriage.

Michael was arrested and charged with lewd and lascivious acts with a child (Pen. Code, § 288). He remained incarcerated and his case advanced to trial during these dependency proceedings. Kimberly and her family supported Michael. They attended his criminal hearings and sat near his mother in the courtroom. In addition, there was speculation that Kimberly's father retained private counsel for Michael and paid his legal fees.

The juvenile court ordered M. and B. detained and offered Kimberly parenting classes and mental health and domestic violence treatment. The court also ordered reasonable supervised visits.

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

The department placed M. and B. with Kimberly's half-sister, T., and her husband. T. made it clear she did not support Michael or Kimberly's relationship with him. This angered Kimberly and created a schism between Kimberly and T.

In October 2014, the juvenile court exercised its dependency jurisdiction over M. and B. after sustaining allegations that Kimberly failed to protect them. The court also ordered Kimberly to participate in parenting classes, substance abuse, mental health and domestic violence evaluations and any recommended treatment, and submit to random drug testing. The court also ordered supervised visitation. In its report for the hearing, the department advised the court that Kimberly and the girls were having weekly one-hour, supervised therapeutic visits with therapist Lauri Andersen.

In December 2014, M. testified against Michael at his preliminary hearing. Kimberly also testified at the hearing and, according to M., Kimberly testified that M. was a liar and that she did not believe her. After the hearing, M. had a scheduled visit with Kimberly and was nervous about seeing her.

Kimberly acknowledged testifying for Michael, explaining that she did not have proof that her daughters were sexually abused. She said Michael was facing a third strike and a 30-year sentence and wondered if the girls were aware of his situation. She also disclosed that she was raped as a child and understood the resultant harm but angrily asked, "[W]hat if we find out the girls are lying?"

In January 2015, Kimberly attended a meeting with T., intern therapist Patricia Ament, social worker Maria Salazar, and Lauri Andersen. During the conversation, Kimberly was confronted with the fact that she did not believe M. and B.'s accusations. She became angry and left the meeting.

In February 2015, at a special interim review hearing, the juvenile court eliminated random drug testing from Kimberly's services plan and granted the department discretion to arrange therapeutic supervised visits. The court continued reunification services and set a combined six- and 12-month review hearing for May 2015 (combined hearing).

3.

That same month, the girls spotted Michael's mother at their new school looking for them. They deduced that Kimberly disclosed the location of their school to Michael's mother and felt threatened by her appearance there.

In its report for the combined hearing, the department recommended the juvenile court terminate Kimberly's reunification services. The department acknowledged that Kimberly had either completed or was participating in all aspects of her services plan, but did not believe she could reunify with M. and B. until she was willing to accept their disclosure that Michael sexually abused them.

The matter was set for a contested hearing which was conducted in June and July of 2015. Kimberly's attorney called Maria Salazar as a witness and questioned her about visitation. Salazar testified she did not know when the supervised visits ordered by the court became therapeutic supervised visits and did not observe them. She acknowledged that some scheduled visits did not occur but did not know which ones. She said M. and B. occasionally refused to visit beginning in February 2015 because of the incident with Michael's mother and because they felt awkward knowing that Kimberly was participating in Michael's criminal proceedings. She said Kimberly got upset whenever the subject of sexual abuse was raised.

Kimberly testified that she and the girls enjoyed regular visitation until lack of county transportation became an issue and several visits were cancelled in January 2015. Kimberly said T. would not transport the girls to visits and faulted her for not supporting her efforts to reunify with them. After the incident in February 2015 with Michael's mother, Kimberly did not see the girls again until the following April.

After Kimberly's testimony, the juvenile court continued the hearing until July 29, 2015, and ordered the department to ascertain the girls' desires regarding reunification and Kimberly's involvement with Michael and report its findings to the court. The court also asked the department to include input from Ament.

On July 24, 2015, Salazar received a voicemail message from M. and B. stating they did not want to visit their mother because the criminal trial was imminent and they would feel awkard in her presence. During a home visit several days later, M. told Salazar she had been through enough and did not feel like talking to her that day.

On July 28, 2015, the department finalized its report. The department was unable to confer with Ament because she was reassigned and the department could not ascertain the reason. Nevertheless, the department reported that Kimberly began therapy with Ament in October 2014. Ament addressed the girls' behavioral issues and the discord between Kimberly and T., but not the sexual abuse. In February 2015, Kimberly was assigned to intern therapist Andrew Constant, who attempted to discuss the sexual abuse with Kimberly. However, when he did, she became upset and requested a new therapist. In late April 2015, Kimberly was assigned to therapist Lucila Bravo, who stated she was discharging Kimberly from therapy for lack of participation.

The department also reported that Kimberly maintained regular in-person and telephonic contact with Michael. During those conversations, Kimberly called her daughters "liars" and stated they "ruined her life and she [did] not want them back."

On July 29, 2015, the juvenile court reconvened the combined hearing and reviewed the department's report. Kimberly's attorney called Lauri Andersen to testify. Andersen said she received a referral for therapeutic supervised visitation from the department in July 2014 and the first visit was conducted in August 2014. Kimberly and the girls did not regularly visit from February to May 2015. By that time, there were 10 missed visits, which she and Salazar unsuccessfully attempted to reschedule.

The juvenile court recalled Salazar to the stand to ascertain the girls' wishes. Salazar had spoken to the girls within the prior two months. B. said she wanted to stay with T. and did not want to reunify with her mother. M. said she wanted to visit her mother but did not want to return to the abuse. She said her mother needed to choose

between her daughters and her husband. Salazar also testified that she was able to make up four of the visits.

During argument, county counsel pointed out that the 18-month review hearing, if set, would occur on October 24, 2015, and argued there was not a substantial probability the girls could be returned to Kimberly's custody by that time because of her refusal to even discuss her daughters' allegations of sexual abuse. Kimberly's attorney argued that Kimberly made substantial progress in complying with her services plan and, if given unsupervised and liberal visitation, could reunify with her daughters by the 18-month review hearing.

The juvenile court found that M. and B. could not be safely returned to Kimberly's custody, terminated Kimberly's reunification services, and set a section 366.26 hearing. In so ruling, the court found that the department provided Kimberly reasonable reunification services but that she made only minimal to moderate progress.

This petition ensued.

## DISCUSSION

Kimberly contends the department did not provide her reasonable services and there was a substantial probability M. and B. could be returned to her custody. Therefore, she argues, the juvenile court erred in terminating her reunification services. We disagree.

Dependency statutes presume in favor of family reunification. Thus, when the juvenile court removes a child from parental custody, it must, as a general rule, provide reunification services. (§ 361.5, subds. (a) & (b).) Reunification services must be reasonable; that is, they must be designed to eliminate the conditions that necessitated the juvenile court's intervention. (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1229.)

Dependency statutes also incorporate an end to reunification efforts. Where, as here, the children were over the age of three years when originally removed from parental custody, the statute limits reunification services to 12 months from the date of the

6.

jurisdictional hearing or the date that is 60 days from the date the children were initially removed, whichever occurs first. (§ 361.5, subd. (a)(1)(A).)

The juvenile court may, however, continue reunification services beyond 12 months. In order to do so, it must find that the parent did not receive reasonable reunification services or that there is a substantial probability that the children will be returned to parental custody within the extended period of time not to exceed 18 months from the time the children were originally removed. (§ 366.21, subd. (g)(1).)

When the juvenile court terminates reunification services and the parent raises a sufficiency of the evidence claim, the question for this court is not whether the evidence supports an alternative finding or order but whether substantial evidence supports the findings and orders made. In this case, the juvenile court found that Kimberly was provided reasonable services. Thus, the question for this court is whether substantial evidence supports the court's finding, not as Kimberly's attorney frames the issue; i.e., whether sufficient evidence supports a finding Kimberly was not provided reasonable services.

Kimberly contends the services provided were not reasonable because Salazar did not promote reunification. More specifically, she focuses on the provision of therapeutic visits and faults Salazar for implementing them without a court order and not knowing when they occurred. She also contends the therapeutic aspect of the visits precluded M. and B. from openly discussing problems they were having with their aunt, T.

Kimberly ignores, however, the fact that therapeutic supervised visits were instituted before the dispositional hearing. If Kimberly's trial counsel believed that that visitation format impeded reunification, trial counsel had ample opportunity to raise the issue and request a change in the visitation order. Further, Kimberly fails to show that Salazar's failure to track the dates of Kimberly's visits adversely impacted her ability to reunify with her daughters. Ms. Andersen certainly knew when they occurred because

7.

she supervised them and, according to the testimony, she provided Salazar verbal input concerning the progress.

Kimberly also contends that Salazar did not assist her and the girls with the problems they were having related to the criminal proceedings. However, Kimberly does not explain what more Salazar could have done to assist. The problem Kimberly and the girls were experiencing stemmed from Michael's prosecution for sexually abusing M. and B. Kimberly and the girls were required to testify and Kimberly publicly supported Michael and declared her daughters "liars." Beyond providing the family therapeutic support, we cannot imagine what more Salazar could have done to ease the awkwardness.

Finally, Kimberly contends that Salazar should have told her that she had to admit the truth of the sexual abuse allegations in order to reunify. However, she does not provide a record citation indicating she was required to do so nor do we find any such requirement in the record. Her contention is thus not supported by the record and we need not address it.

We conclude in light of the foregoing that substantial evidence supports the juvenile court's finding that Kimberly was provided reasonable reunification services.

Having properly found that Kimberly was provided reasonable reunification services, the juvenile court had no choice but to terminate them and set a section 366.26 hearing unless it found there was a substantial probability M. and B. could be returned to Kimberly's custody. Kimberly's appellate counsel purportedly raises the issue but does not develop it.[2] Therefore, she has abandoned the issue. (*Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119-1120.)

---

[2] Appellate counsel states the juvenile court's orders were erroneous and sets forth two grounds in subheadings designated "A." and "B." Subheading "B." states "THE EVIDENCE WAS SUFFICIENT TO FIND SUBSTANTIAL PROBABILITY OF RETURN AND EXTEND SERVICES BEYOND 18 MONTHS." Counsel does not, however, develop the argument.

We find no error and deny the petition.

## DISPOSITION

The petition for extraordinary writ is denied.  This opinion is final forthwith as to this court.